**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-03072-TC

---

RICO J. BROWN, SR.,

*Plaintiff*

v.

HAZEL M. PETERSON,

*Defendant*

---

**MEMORANDUM AND ORDER**

Rico Brown was convicted of aggravated human trafficking, battery, promoting the sale of sexual relations, and violation of a protective order. Doc. 17-3 at 190. He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds of ineffective assistance of counsel and prosecutorial misconduct. Doc. 1. For the following reasons, Brown's petition is denied.

**I**

**A**

Over the centuries, several writs of habeas corpus evolved at common law. *See Ex parte Bollman*, 4 Cranch 75, 97–98 (1807); 3 W. Blackstone, *Commentaries on the Laws of England* 129–131 (1768). The most significant of these was the *writ of habeas corpus ad subjiciendum*, the so-called Great Writ. 3 W. Blackstone, *Commentaries* at 131. Common law courts employed the writ to force English monarchs to explain their capricious fancies, and to correct them when necessary. *Brown v. Davenport*, 596 U.S. 118, 128 (2022). In this way the Great Writ was "the instrument by which due process could be insisted upon." *Hamdi v. Rumsfeld*, 542 U.S. 507, 555 (2004) (Scalia, J., dissenting).

The tradition persisted in the American colonies. It was codified in the Suspension Clause of the Constitution, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. The Clause does not create a privilege, but rather recognizes the existence of one. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116 (2020). In 1789, the Congress granted federal courts the authority to issue the writ of habeas corpus against the Federal Government. *Stone v. Powell*, 428 U.S. 465, 474–75 (1976). This was followed by an extension of the writ to state prisoners in 1867. *Id.* at 475. Over the years, the Supreme Court has repeatedly "emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for the vigor of the Great Writ." *Johnson v. Avery*, 393 U.S. 483, 485 (1969).

But the writ was not without limits. At common law, prisoners could not use it to challenge a final judgment issued by a court of competent jurisdiction. *Brown*, 596 U.S. at 128. Courts saw trials as inherent evidence that a defendant had received due process. *Id.* In *Ex parte Watkins*, Chief Justice Marshall noted: "[A] court can undoubtedly inquire into the sufficiency of [a judgment]; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause?" *Ex parte Watkins*, 28 U.S. at 202. The view was that "[m]ere error in the judgment or proceedings, under and by virtue of which a party is imprisoned, constitutes no ground for the issue of the writ." *Ex parte Siebold*, 100 U.S. 371, 375 (1879). Thus, courts could examine "only the power and authority of the court to act, not the correctness of its conclusions." *Harlan v. McGourin*, 218 U.S. 442, 448 (1910).

And in our system of dual sovereignty, where most aspects of criminal law are administered in state courts, concerns of comity, federalism, and finality urge caution. *See generally Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). Reflective of those concerns, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which govern petitions for writs of habeas corpus from state courts. 28 U.S.C. § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Martinez v. Quick*, 134 F.4th 1046, 1055 (10th Cir. 2025). "Because federal habeas review overrides the States' core power to enforce criminal law, it 'intrudes on state sovereignty to a degree matched by few exercises of

2

federal judicial authority.'" *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (quoting *Harrington*, 562 U.S. at 103); *see also Kansas v. Garcia*, 589 U.S. 191, 212 (2020) ("From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today.").

AEDPA therefore limits when federal courts may grant state prisoners habeas relief. Federal courts may not grant habeas relief unless the state's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law [or] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established law "if it applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Underwood v. Royal*, 894 F.3d 1154, 1162 (10th Cir. 2018) (quoting *Lockett v. Trammel*, 711 F.3d 1218, 1231 (10th Cir. 2013)). And it involves an unreasonable application of federal law "if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of petitioner's case." *Id.* (quoting *Lockett*, 711 F.3d at 1231).

State courts' factual determinations are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A defendant challenging a state court's finding has the burden of rebutting this presumption by "clear and convincing evidence." *Id.* Furthermore, federal courts are bound by state courts' interpretation of state law. *See Sumpter v. Kansas*, 61 F.4th 729, 741 (10th Cir. 2023) (quoting *Bradshaw v. Richey*, 546 U.S. 75, 76 (2005)) ("[A] state court's interpretation of state law binds a federal court sitting in habeas corpus.").

**B**

In 2013, Brown met seventeen-year-old A.L.H outside a grocery store in Topeka, Kansas. Doc. 17-14 at 7.[1] The two began to communicate on Facebook. *Id.* at 10. When her parents kicked her out of their home, A.L.H. moved into an apartment with Brown and his girlfriend, M.J. *Id.* at 11. While the three lived together, Brown and M.J. began to teach A.L.H. how to work as a prostitute. *Id.* at 19–20. A.L.H.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

would give her prostitution earnings to M.J., who in turn would give them to Brown. *State v. Brown*, 2016 WL 6910080 at *1 (Kan. Ct. App. Nov. 23, 2016). Brown simultaneously arranged for M.J. to work as a prostitute. *Id.*

The State of Kansas charged Brown with aggravated human trafficking for his conduct regarding A.L.H. *Brown*, 2016 WL 6910080 at *1. As to M.J., Brown was charged with human trafficking or promoting the sale of sexual relations. *Id.* He was also charged with aggravated battery for striking M.J. and with violating a protective order for communicating with M.J. after he appeared in the district court on the initial charges. *Id.* The district court held a two-day bench trial in October 2014. Brown was convicted of aggravated human trafficking, promoting the sale of sexual relations, misdemeanor battery, and violation of a protective order. *Id.* He was sentenced to 258 months in prison. *Id.*

Brown appealed. *Brown*, 2016 WL 6910080. The Kansas Court of Appeals upheld his convictions. *Id.* The Kansas Supreme Court declined to review. *State v. Brown*, 2017 Kan. LEXIS 362 (Kan. June 20, 2017).

Brown then filed a motion for post-conviction relief, which the district court summarily denied. He appealed that denial to the Kansas Court of Appeals. *Brown v. State*, 2019 WL 3242417 (Kan. Ct. App. July 19, 2019). That court reversed in part "for an evidentiary hearing limited to the question whether Brown's counsel failed to advise him about his right to testify and whether Brown waived that right." *Brown*, 2019 WL 3242417 at *2. Given that Brown had alleged in his post-conviction motion that his lawyer failed to advise him about his right to testify, the Kansas Court of Appeals reasoned that the district court should have held an evidentiary hearing because "if [Brown's] claim is true, what other facts could be alleged to support it?" *Id.* Thus, the district court was wrong to summarily deny Brown's motion. *Id.*

On remand, the district court held an evidentiary hearing. *Brown v. State*, 2022 WL 188800 at *1 (Kan. Ct. App. Jan. 21, 2022). Brown attested that he wanted to testify at trial but that his lawyer, Crystal Krier, did not discuss that desire with him, and that no one explained to him that it was his right to testify. *Id.* Krier testified that she did in fact discuss the matter with Brown, and that Brown did not want to testify. *Id.* The district court denied Brown's motion, finding that Brown's testimony was not credible because he had previously filed a pro se motion for a new trial wherein he noted that he decided not to testify

4

based on Krier's advice. *Id.* The Kansas Court of Appeals affirmed. *Brown v. State*, 2022 WL 188800 (Kan. Ct. App. 2022).

Brown now brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. He asserts various claims of ineffective assistance of counsel and prosecutorial misconduct. The State of Kansas has responded to Brown's petition, and the matter is ripe for review.

## II

Brown has failed to exhaust most of his claims. And he has not shown that Krier's representation was objectively unreasonable or that he was prejudiced as to his exhausted claims. Accordingly, Brown's petition is denied.

### A

Brown argues that Krier's representation at trial was deficient for various reasons. Doc. 1 at 15–16. He also argues that the prosecutor engaged in misconduct regarding the admission of certain evidence. *Id.*

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quotation marks omitted); *see* 28 U.S.C. § 2254(b)(1)(A). State prisoners must exhaust available state-court remedies before a federal court can entertain a habeas petition. *Fontenot*, 4 F.4th at 1018. This exhaustion doctrine is rooted in federal-state comity and is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first affording the state courts an opportunity to correct a constitutional violation. *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).

Exhaustion occurs when a state prisoner's claim goes through "one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Fontenot*, 4 F.4th at 1019 (quotation marks omitted). This requires a claim to be "fairly presented" to the state court. *Id.* The crucial inquiry is "whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id.*

5

Sometimes a habeas petition will contain some claims that have been exhausted and others that have not. Courts refer to those petitions as "mixed." *Jones v. Bock*, 549 U.S. 199, 221 (2007). When faced with a mixed petition, a federal district court has four options. *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009). First, it may dismiss the petition in its entirety without prejudice and allow the petitioner "to return to state court to present the unexhausted claims to that court in the first instance." *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Second, the district court may, if it determines that the petitioner had good cause for failing to meet the exhaustion requirement and the claims are not meritless, stay the petition in abeyance while the petitioner returns to state court. *See id.* at 277. Third, the district court may determine that the unexhausted claims would be procedurally barred in state court and "instead of dismissing the entire petition, the court can deem the unexhausted claims procedurally barred and address the properly exhausted claims." *Fontenot*, 4 F.4th at 1019; *see also Wood v. McCollum*, 833 F.3d 1272, 1274 (10th Cir. 2016) ("A district court may not dispose of a mixed petition in a hybrid fashion by adjudicating the exhausted claims on the merits and dismissing the unexhausted claim(s) without prejudice."). Finally, the court may disregard the exhaustion requirement and address the petition on the merits. 28 U.S.C. § 2254(b)(2).

Brown presents a mixed petition because he failed to exhaust seven of his claims.[2] Specifically, Brown claims that Krier withheld exculpatory evidence, did not inform him of his right to file motions himself, did not submit evidence at trial, did not call a witness on his behalf, and had a conflict of interest. Doc. 1 at 8–9. None of these claims were presented on direct appeal or in his state post-conviction motion. *See generally Brown*, 2016 WL 6910080; *Brown*, 2019 WL 3242417. As a

---

[2] Respondent filed a pre-answer response stating that "Petitioner has exhausted his state court remedies in the sense that there are no more avenues in the state courts through which he could raise his claims," and that "Petitioner has no further state litigation options through which to challenge his convictions and sentence." Doc. 10 at 1–2. That much is true because Brown is barred from filing another post-conviction motion. Kan. Stat. Ann. § 60-1507(f); *see State v. Brown*, 569 P.3d 909, 914 (Kan. 2025) (declining to review an untimely post-conviction motion). But Brown's claims have not been exhausted because they were not fairly presented to the district court in his original motion. *See Fontenot v. Crow*, 4 F.4th 982, 1019 (10th Cir. 2021) ("A claim has been exhausted when it has been 'fairly presented' to the state court.") (quotation marks omitted).

result, they have not been exhausted. *See Davis v. Sharp*, 943 F.3d 1290, 1296 (10th Cir. 2019) (affirming the district court's conclusion that petitioner's claims were unexhausted because he "never presented such claims in state court, either on direct appeal or in his postconviction application"). Brown also claims that Krier failed to suppress the admission of an exhibit at trial and that the prosecutor committed prosecutorial misconduct by admitting the exhibit. Doc. 1 at 15. Those claims are unexhausted because, although Brown raised them in the state post-conviction motion he submitted to the trial court, he abandoned them on appeal and thus did not fully and fairly present them to the state courts. *See Brown*, 2019 WL 3242417 at *1 (citing *State v. Arnett*, 413 P.3d 787, 790 (Kan. 2018)) (declining to reach the merits of those claims because Brown "did not brief [them] on appeal"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

When state law bars a prisoner from returning to state court to exhaust a claim, the claim faces an "anticipatory procedural bar." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (quoting *Moore v. Schoeman,* 288 F.3d 1231, 1233 n. 3 (10th Cir. 2002)). Federal courts may not consider such claims unless the prisoner alleges sufficient cause for failing to exhaust, and resulting prejudice, or if denying review would result in manifest injustice. *Id.*

Brown's unexhausted claims face an anticipatory procedural bar. Were Brown to return to state court to fully exhaust his claims, state law would deem his petition untimely. *See* Kan. Stat. Ann. § 60-1507(f)(1)(C) (setting a limit of one year from the state supreme court's denial of review to file a post-conviction petition); 2023 Kan. LEXIS 245 (Kan. Feb. 17, 2023) (state supreme court's order denying review). State law also bars Brown from filing a second post-conviction motion that seeks similar relief as his first motion. Kan. Stat. Ann. § 60-1507(c). Accordingly, Brown's unexhausted claims are procedurally barred, and he has not demonstrated good cause for his misstep and prejudice or manifest injustice. *Cf. Frost*, 749 F.3d at 1232 (declining to analyze an exception when the prisoner did not assert that it applied).

**B**

Brown argues that his lawyer was ineffective because she did not conduct a thorough investigation and failed to notify him of his right

to testify at trial. Doc. 1 at 8–9; Doc. 19. Those claims have been fully preserved and exhausted. As a result, they may be considered in a § 2254 petition.

Claims for ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984) and require two showings. First, "the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687; *United States v. Maley*, 1 F.4th 816, 820 (10th Cir. 2021). The attorney's representation must have fallen "below an objective standard of reasonableness." *Maley*, 1 F.4th at 820 (quoting *Strickland*, 466 U.S. at 688). This inquiry is "highly deferential and must be made without 'the distorting effects of hindsight.'" *Menzies v. Powell*, 52 F.4th 1178, 1196 (10th Cir. 2022) (quoting *Strickland*, 466 U.S. at 689). Second, "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This requires a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Maley*, 1 F.4th at 820 (quoting *Strickland*, 466 U.S. at 694). Courts can address these two prongs in any order, and failure is dispositive under either. *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) ("An ineffective assistance claim may be resolved on either performance or prejudice grounds alone.").

Brown has not shown that Krier's representation was objectively unreasonable.[3] He argues that Krier "failed to conduct a basic investigation" into allegedly exculpatory letters and false police reports. Doc. 19 at 4. But the Kansas Court of Appeals considered that claim and found no evidence that Krier conducted a poor investigation. In particular, the court noted that Brown failed to "support this allegation with any citations to the record or with any other details, such as what police reports or exculpatory letters and documents he was referring to." *Brown*, 2019 WL 3242417 at *3. That conclusion is presumed correct, and Brown has not met his burden to rebut it by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Brown also fails to show that Krier did not advise him of his right to testify. Brown contends that Krier failed to "affirmatively advise

---

[3] Because Brown fails to show objective unreasonableness, it is unnecessary to analyze whether he was prejudiced. *See Byrd v. Workman*, 645 F.3d 1159, 1169 (10th Cir. 2011) (affirming the district court's denial of the defendant's habeas petition where he failed to satisfy one prong of *Strickland*).

[him] that it was his choice alone whether to testify." Doc. 19 at 5. Yet the Kansas Court of Appeals affirmed the district court's finding to the contrary. *Brown*, 2022 WL 188800 at *2. After holding an evidentiary hearing, the district court found Krier's testimony credible that she had advised Brown of his right to testify. *Id.* It also found Brown's testimony not credible given that he had filed a motion for a new trial wherein he noted that "he decided not to testify based on his discussions with Krier." *Id.* As noted above, this factual finding is presumed correct. 28 U.S.C. § 2254(e)(1). And Brown has not met his burden to rebut that presumption by clear and convincing evidence.

## III

For the foregoing reasons, Brown's Petition for a Writ of Habeas Corpus, Doc. 1, is DENIED.

It is so ordered.

Date: November 24, 2025        s/ Toby Crouse
                               Toby Crouse
                               United States District Judge